RECEIVED
IN ALEXANDRIA, LA.
AUG 2 5 2014
TONY R. MOORE, CLERK
          DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD T. LOGAN | CIVIL ACTION NO. 13-0900 |
| -vs- | JUDGE DRELL |
| ERIC H. HOLDER, JR. | MAGISTRATE JUDGE KIRK |

## RULING

Pending before the Court is a "Motion for Summary Judgment" (Doc. 4) filed by Defendant Attorney General Eric Holder. All responses have been filed and the matter is ready for disposition. For the reasons below, and after de novo review[1] Defendant's Motion will be **DENIED**.

### I. Factual and Procedural Background

Plaintiff Richard T. Logan was born on August 31, 1964 and began working for the Federal Bureau of Prisons in March 1998. (Report of Investigation, Doc. 4-8 at 122; Report of Investigation: Supplemental, Doc. 4-9 at 35). As a Senior Officer Specialist at Pollock Federal Correctional Complex ("FCC Pollock") from March 1998 to February 2009, Mr. Logan was responsible for "maintain[ing] the security of the institution" and

---

[1] While the Court views this case de novo, "a trial de novo is not to be considered a trial in a vacuum." Smith v. Universal Servs., Inc., 454 F.2d 154, 157 (5th Cir. 1972). In accordance with Fifth Circuit jurisprudence, we find the EEOC investigative report admissible for the purpose of this motion under the Federal Business Records Act. Id. While it can be admissible, it is "clear that the report is in no sense binding on the district court." Id.; see also Stokes v. Terrebonne Parish Sheriff's Office, No. 12-1241, 2013 WL 1948120 at *2 (E.D. La. 2013).

"monitor[ing] inmates to ensure they follow policies and procedures." (Report of Investigation, Doc. 4-8 at 48–49). Pollock Federal Correctional Complex ("FCC Pollock") is comprised of the following facilities: a high security United States Penitentiary ("USP Pollock"), a medium security Federal Correctional Institution ("FCI Pollock"), and a minimum security satellite camp ("Pollock Camp") in a single compound. Around February 2009, FCC Pollock was preparing for a program review in the computer services department. (EEOC Hearing Transcript, Doc. 4-10 at 9). Because of the impending program review and also the activation of the Federal Correctional Institution, FCC Pollock's Warden Joseph Keffer ("Warden Keffer") decided to announce a temporary detail for an information technology ("IT") specialist position. (Id. at 9–11). Warden Keffer spoke to Mr. Logan and discovered Mr. Logan had a background in information technology and an interest to transition into the computer field. (Id. at 7–8). The parties dispute the timing of this conversation between Warden Keffer and Plaintiff. Plaintiff contends it transpired after he applied for the temporary position and long after the temporary position was announced while Defendant argues it occurred before the position was announced. (Compare Plaintiff's Statement of Contested Facts, Doc. 12-2 at ¶ 4 with Defendant's Statement of Uncontested Facts, Doc. 4-1 at ¶ 4).

It is undisputed that Mr. Logan had earned an Associate Degree in Computer Technology from Aiken Technical College in Aiken, South Carolina with a 3.6625 grade point average in 2000. (Report of Investigation, Doc. 4-8 at 123). With Plaintiff's educational background in mind, Warden Keffer selected Plaintiff to fill a twelve (12) month temporary IT specialist detail from February 2, 2009 to February 2, 2010. (EEOC

Hearing Transcript, Doc. 4-10 at 10–11; Report of Investigation, Doc. 4-8 at 120–25). While working the temporary IT specialist detail, Mr. Logan performed the typical responsibilities of a full-time IT specialist. (Report of Investigation, Doc. 4-8 at 120–21). Plaintiff then served outside the detail for an additional six (6) months following that on a Temporary Duty Assignment (TDA) as an Information Technology Specialist at FCC Pollock from February 3, 2010 until August 4, 2010. (Id.).

During Mr. Logan's TDA as an IT specialist, the full activation of FCI Pollock necessitated the creation of a new full-time, permanent, IT specialist position at the FCC. (EEOC Hearing Transcript, Doc. 4-10 at 11). On February 24, 2010, a vacancy for a full-time IT specialist position was announced (Announcement Number: POL-2010-0030) on the usajobs.gov website. (Report of Investigation, Doc. 4-8 at 108). The announcement was made at general schedule ("GS") pay grades 5, 7, and 9. (Id.). While Plaintiff agrees this is correct, Plaintiff contests the statement as incomplete because the position was also announced for promotion potential for GS-11. (Plaintiff's Statement of Contested Facts, Doc. 12-2 at ¶7; see also Report of Investigation, Doc. 4-8 at 108). When the announcement was made, Plaintiff was working as a GS-8. (Report of Investigation, Doc. 4-8 at 122).

Plaintiff filed a timely application for the vacancy and was placed on the Merit Promotion Certificate, also known as the "Best Qualified List" ("BQL"), for the GS-7 pay grade. (Id. at 118). Three other applicants, including the eventual selectee, made the BQL at the GS-5 pay grade. (Id. at 117). Of the four individuals to make the BQL only one,

3

Mr. Dustin Crawford, was not already working at FCC Pollock. (Id. at 129; Report of Investigation: Supplemental, Doc. 4-9 at 41–43).

Many facts regarding the selection to fill the vacancy are fervently disputed, including the authority to fill the position, the qualifications of the selectee, and Warden Keffer's reasoning behind the selection. For example, while Defendant states Warden Keffer was the selecting official for the vacancy, Plaintiff counters the selection was unauthorized because it violated PS 3000.03, which allegedly specifies the Bureau of Prisons Regional Director as the proper selecting authority for the IT specialist position. (Compare Defendant's Statement of Uncontested Facts, Doc. 4-1 at ¶ 9 with Plaintiff's Statement of Contested Facts, Doc. 12-2 at ¶ 9(a)).

The parties do not dispute that on July 22, 2010, Plaintiff was informed via email that he was not selected for the permanent position, and Mr. Dustin Crawford was. (Report of Investigation, Doc. 4-8 at 135–37). When Mr. Crawford applied for the position, he was already working as a Correctional Officer at the Federal Correctional Complex in Oakdale, Louisiana ("FCC Oakdale"). (Report of Investigation, Doc. 4-8 at 129; Report of Investigation: Supplemental, Doc. 4-9 at 42–43). According to Defendant, before Mr. Crawford worked for the Federal Bureau of Prisons, he had been employed by the United States Navy as a Control Officer and worked in the IT field from September 2007 to May 2009. (Report of Investigation, Doc. 4-8 at 129). Mr. Crawford's background consisted of a bachelor's degree in mathematics and physics with a 3.484 grade point average from Louisiana Tech University in 2005. (Id. at 130).

4

Plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC") on September 30, 2010. (Report of Investigation, Doc. 4-8 at 2). The Commission conducted an investigation of the complaint and held an administrative hearing. (See Report of Investigation, Doc. 4-8; EEOC Hearing Transcript, Doc. 4-10). On January 31, 2013, Plaintiff was denied relief at the EEOC level, but was informed he had the right to file his civil action in federal court within ninety days of receiving the letter. (EEOC Appeal, Doc. 4-7). Plaintiff filed this timely complaint on May 1, 2013 alleging Defendant discriminated against him on the basis of age when it hired Mr. Crawford as the new the IT Specialist at FCC Pollock. (Complaint, Doc. 1). In response, Defendant filed the Motion for Summary Judgment currently pending. (Defendant's Motion for Summary Judgment, Doc. 4).

## II. Law and Analysis

### A. Motion for Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider "all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011) (internal quotations omitted). It is important to note that the standard for a summary judgment is two-fold: (1) there

is no genuine dispute as to any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

**B. Age Discrimination in Employment Act ("ADEA")**

Generally, the Age Discrimination in Employment Act ("ADEA") prohibits an employer from discriminating against an individual on the basis of an individual's age. See 29 U.S.C. § 621 et seq. When Congress enacted the Age Discrimination in Employment Act, it distinguished non-federal sector employees (including private sector and local government employees) from federal sector employees. Compare 29 U.S.C. § 623 with 29 U.S.C. § 633. Claims of age discrimination against non-federal sector employees are governed by 29 U.S.C. § 623(a) which states: "It shall be unlawful for an employer– to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of an individual's age." (Emphasis added). In contrast, for employees under the federal provision of the statute, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age... shall be made free from any discrimination based on age." 29 U.S.C. § 633(a).

The Supreme Court of the United States clarified that in cases against non-federal sector employers, the "because" language necessitates employees prove by a preponderance of the evidence that "but-for" age, the alleged discriminatory employment action would not have occurred. Gross v. FBL Fin. Servs., Inc, 557 U.S. 167, 177 (2009). In that case, the Supreme Court instructed that when lower courts are conducting statutory interpretation, courts "must be careful not to apply rules applicable

6

under one statute to a different statute without careful and critical examination." Gross, 557 U.S. at 174 (additional citation omitted). Recently the Fifth Circuit declined to resolve what standard of proof applies to an age discrimination claim brought under the ADEA's federal sector provision after Gross. Leal v. McHugh, 731 F.3d 405, 411, 414 at note 8 (5th Cir. 2013). While not deciding the issue, Chief Judge Stewart's opinion did discuss a case from the District of Columbia Circuit that held a federal sector employee need only show the personnel action involved "any discrimination based on age." Id. at 411–12 (discussing Ford v. Mabus, 629 F.3d 198 (D.C. Cir. 2010)). The Ford Court reasoned that the sharp difference in language of the two statutory provisions calls for different causation standards to apply. 629 F.3d at 203–06. Another district court in our circuit, examining the issue post-Gross, similarly found the heightened but-for causation standard does not apply to federal sector age discrimination cases and the lower "motivating factor" standard should apply because of the difference in statutory language. See Fuller v. Gates, 06-0091, 2010 WL 774965 (E.D. Tex. 2010). We find the plain language of the statutes and reasoning of the referenced courts persuasive. We thus apply the "motivating factor" causation standard to ADEA claims against the federal government brought under section 633(a).[2]

To establish a prima facie case of age discrimination under this portion of the ADEA, the plaintiff here must show that: (1) he was within the protected class (a government employee age 40 or over) at the time; (2) he was qualified for the position;

---

[2] The Court notes that Defendant agrees that this case falls under the federal sector provision of the ADEA and the "motivating factor" causation standard applies in this case. (Defendant's Memorandum in Support of Motion for Summary Judgment, Doc. 4-4 at 6).

7

(3) he suffered an adverse employment decision; and (4) he was replaced by a younger employee or treated less favorably than similarly situated younger employees. See Leal, 731 F.3d at 410–11. "[A] plaintiff is entitled to a "presumption of discrimination" if he can meet the "'minimal' initial burden" of establishing a prima facie case." Reed v. Neopost USA, Inc., 701 F.3d 434, 439 (5th Cir. 2012) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981) (additional citations omitted)). "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden 'is not onerous.'" Id. (additional citations omitted).

Once a prima facie case is established by the plaintiff, "the burden then must shift to the employer to articulate some legitimate, non-discriminatory reason" for the employment decision. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010). If the employer meets its burden, then the burden shifts back to plaintiff to rebut employer's purported reasons and show they were merely pretextual. See Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378–79 (5th Cir. 2010). It is always the plaintiff's burden "make an ultimate showing of intentional discrimination." Reed v. Neopost USA, Inc., 701 F.3d 434, 439 (5th Cir. 2012) (citing Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005)) (additional citations omitted).

To determine whether the plaintiff's rebuttal precludes summary judgment, the Fifth Circuit provides this instruction:

> [T]he question is whether the plaintiff has shown that there is a genuine issue [now "dispute"] of material fact as to whether this reason was pretextual. A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of

8

credence.' A showing that the unsuccessful employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected will be sufficient to prove that the employer's proffered reasons are pretextual.

E.E.O.C. v. DynMcdermott Petroleum Operations Co., 537 Fed. Appx. 437, 442 (5th Cir. 2013) (citing Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010)).

Here, Defendant argues Plaintiff failed to establish a prima facie case for age discrimination under the ADEA. (Defendant's Memorandum in Support of Motion for Summary Judgment, Doc. 4-4 at 8–10). However, the prima facie case test cited by Defendant erroneously requires Plaintiff to prove but-for causation and, as observed supra, but-for causation is not required for age discrimination cases against employers who are federal agencies. (See id. at 6,8). The Court finds Plaintiff has established a prima facie case of age discrimination. Mr. Logan was forty-five years of age when the hiring decision was made, making him part of the protected class. Plaintiff was likely qualified for the IT specialist position, as he was one of only four candidates on the Best Qualified List and at the time was working on a temporary IT specialist detail at FCC Pollock. Plaintiff suffered an adverse employment action when he was not hired for the IT specialist position, and a significantly younger employee was selected. Thus, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for selecting Mr. Crawford instead of Mr. Logan.

Defendant contends Mr. Crawford was better qualified, had excellent references, and would increase the FCC Pollock staff as legitimate, nondiscriminatory reasons for hiring Mr. Crawford. (Id. at 10–11). Defendant also claims Warden Young of FCC Oakdale recommended Mr. Crawford for the position and that carried great weight with Warden

Keffer. (Id. at 11, EEOC Hearing Transcript, Doc. 4-10 at 19–20). Plaintiff argues these articulated justifications are pretextual because Mr. Logan, among other reasons that need not be detailed here, was clearly better qualified for the IT specialist position. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Doc. 12 at 10–15, 19–20).

*1. Whether Plaintiff was "clearly better qualified" than selectee*

To prove he is clearly better qualified, the plaintiff must "present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over him for the job in question.'" Moss, 610 F.3d at 923 (quoting Deines v. Texas Dep't of Protective Services, 164 F.3d 277, 280–81 (5th Cir. 1999)).

Mr. Logan's qualifications include an associate's degree in computer sciences, his specific training for the IT specialist position, and his experience working as an IT specialist for a year and a half. While his qualifications are clear, Mr. Crawford's qualifications are more enigmatic from the record. Because of this uncertainty, whether Mr. Logan is "clearly more qualified" for the position than Mr. Crawford is a genuine dispute of material fact.

Plaintiff testified at the hearing conducted by the EEOC that Warden Keffer described Mr. Crawford as the "young correctional officer from Oakdale that had a master's degree," but any mention of a master's degree on Mr. Crawford's resume is

absent.[3] (Compare EEOC Hearing Transcript, Doc. 4-10 at 5 with Report of Investigation, Doc. 4-8 at 128–131). Rather, the record shows Mr. Crawford double majored in mathematics and physics, receiving a Bachelor of Science degree. (Report of Investigation, Doc. 4-8 at 130). While it appears Mr. Crawford may have taken a computer science class in college, the extent to which his course work in computer sciences prepared him for a career in information technology is unknown. (Report of Investigation: Supplemental, Doc. 4-9 at 58–60). Mr. Crawford did not list any courses as relevant coursework for the IT specialist position on his resume. (Id.). Defendants argue Mr. Crawford is qualified to be the IT specialist based on his work experience in the Navy as a Systems Control Officer at the Pentagon. (Defendant's Memorandum in Support of Motion for Summary Judgment, Doc. 4-4 at 4, 11). However, Mr. Crawford's job description, tasks, and responsibilities during his time at the Pentagon are also unclear.

The record is incomplete regarding the information Warden Keffer relied on to determine which candidate was best qualified for the position as only excerpts of Warden Keffer's testimony were included in the record. (EEOC Hearing Transcript, Doc. 4-10 at 7). How Warden Keffer determined which candidate was best qualified and whether age was a factor, the central issue in this case, is another genuine dispute of material fact. Warden Keffer did not interview the applicants. (Id. at 15). So we have no benefit of supplemental information other than the sketchy applications. Also

---

[3] Apparently another witness testified to hearing a similar description of Mr. Crawford during the EEOC hearing because it is cited by a party in its memorandum, but that part of the transcript has not been made part of the record before this Court. (Defendant's Memorandum in Support of Motion for Summary Judgment, Doc. 4-4 at 9–10).

unresolved, as a matter of law, is whether, indeed, Mr. Keffer was the proper person to make the selection.

While other genuine disputes of material fact remain in contention, we need not discuss all of them here. Even the ones discussed above are sufficient to deny the motion, together with the question of whether the Defendant is entitled to judgment as a matter of law. Genuine disputes of material fact make granting summary judgment inappropriate.

### III. Conclusion

Therefore, because the record is unclear and numerous genuine disputes of material fact remain, the motion will be **DENIED**.

SIGNED on this 25 day of August, 2014 at Alexandria, Louisiana.

                              DEE D. DRELL, CHIEF JUDGE
                              UNITED STATES DISTRICT COURT