RECEIVED

MAY - 3 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD T. LOGAN | CIVIL ACTION NO. 13-cv-09000 |
| -vs- | JUDGE DRELL |
| ERIC HOLDER, JR., ATTORNEY GENERAL, DEPARTMENT OF JUSTICE | MAGISTRATE JUDGE PEREZ-MONTES |

RULING

I.    Factual Background & Procedural History

This suit was brought by Richard T. Logan against Eric Holder, in his capacity as the United States Attorney General,[1] pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (Doc. 1). Mr. Logan was born on August 31, 1964 and began his employment as a Senior Officer Specialist with the Department of Justice, Bureau of Prisons (BOP) at the Federal Correctional Complex in Pollock, Louisiana (FCC Pollock) in March 1998. (Doc. 51, p. 1).

Around February 2009, as FCC Pollock was preparing for a program review in the computer services department, the warden, Joseph Keffer (Warden Keffer), announced a temporary "detail for training" as an Information Technology (IT) Specialist.[2] (Id. at 2). Prior to the announcement, Warden Keffer spoke with Mr. Logan about his background in information

---

[1] Loretta Lynch, the current United States Attorney General, has also been added as a defendant to the suit. (See Doc. 45).

[2] The factual synopsis, although referenced to record pages, is consistent with the testimony and documents introduced at trial and references the proposed findings of fact and conclusions of law submitted pre-trial.

technology and his desire to transition into the computer services field. (Id.). Warden Keffer selected Mr. Logan for the twelve month IT Specialist detail, which lasted from February 2009 until February 2010. (Doc. 52, p. 2). During that detail, Mr. Logan was trained to perform the normal responsibilities of a full-time IT Specialist. (Doc. 51, p.2). Mr. Logan then served in a "Temporary Duty Assignment" as an IT Specialist at FCC Pollock for an additional six months immediately following the detail for training, all finally ending in August 2010. (Doc. 4-5, p. 8).

In February 2010, the full activation of the Federal Correctional Institution at Pollock created the need for an additional full-time IT Specialist.[3] (Doc. 51, p. 2). The BOP announced a vacancy for the full-time IT Specialist position on February 24, 2010 through the usajobs.gov website at general schedule pay grades 5, 7, and 9. (Id.). Mr. Logan timely applied for the position. (Id.). After the application period ended, four applicants, including Mr. Logan and the eventual selectee, Dustin Crawford, were placed on a Merit Promotion Certificate, also known as the "Best Qualified List." (Id.). The Best Qualified List and the applicants' data reports were sent to and reviewed by Warden Keffer who was the authorized official to select an applicant to fill this particular vacancy.[4] (Id. at 3).

Mr. Logan's résumé contained work experience as an IT Specialist and as a Senior Officer Specialist at FCC Pollock. (Doc. 58-6, p. 2–4). The description of his position as a Senior Officer Specialist specifically noted the knowledge and skills he had acquired for the SENTRY database used at FCC Pollock.[5] (Id. at 4). Mr. Logan had previously earned an associate degree in computer

---

[3] FCC Pollock is a complex of federal institutes, which is comprised of several facilities: a high security United States Penitentiary, a medium security Federal Correctional Institution, and a minimum security satellite camp.
[4] Prior to trial, the parties disputed whether Warden Keffer was the proper selecting official for this position. (See Doc. 39, p. 6 ("Was Warden Keffer's selection authorized or in violation of PS 3000.03.")). At trial, however, counsel for Plaintiff stated in open court he was not contesting and was withdrawing the issue as to whether Warden Keffer had the authority to select someone for the IT Specialist position.
[5] Diagnosing and correcting problems in the SENTRY program was one of the performance tasks of an IT Specialist. However, knowledge of the SENTRY program was not a requirement to be selected for the position. (See Doc. 58-3; 58-1).

2

technology and also had training in Novell networking. (Id. at 5 –6). All of Mr. Logan's reference checks ranged from average to above average. (Id. at 7 –8).

Dustin Crawford's résumé included work experience as a Correctional Officer at the Federal Correctional Complex in Oakdale, LA (FCC Oakdale) and as a Systems Control Officer and Project Coordinator in the United States Navy. (Doc. 58-5, p. 2–3). His position at the Pentagon as a Systems Control Officer involved several years of IT work. (Id.). Mr. Crawford had a dual bachelor's degree in physics and mathematics. (Id. at 3). He also listed an "IT Specialist Cross Development Course" under job related training. (Id. at 4). Mr. Crawford's reference checks ranged from average to above average, but included an exceptional reference from Joe Young who was then the Warden at FCC Oakdale.[6] (Id. at 5–7).

Warden Keffer ultimately selected Dustin Crawford—age 27 at the time of his selection—for the full-time IT Specialist position. (Doc. 51, p. 3). Mr. Logan was notified by email that he was not selected for the position on July 22, 2010, and a few months later, on September 30, 2010, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging age discrimination in the selection process for the IT Specialist position. After an investigation and an administrative hearing, the EEOC denied Mr. Logan relief but issued a right to sue letter per standard procedure. (Doc. 52, p. 3).

Mr. Logan timely filed his complaint on May 1, 2013. (Doc. 1). In response, Defendants filed a motion for summary judgment, which was denied. (Docs. 4, 21). A one-day bench trial was held on March 22, 2016, and the case was taken under advisement.

---

[6] Several of the categories on Mr. Crawford's reference checks were listed as "Not Observed." (Doc. 58-5, p. 5–6).

## II.   ADEA Standard for Federal Employees

The Age Discrimination in Employment Act (ADEA) prohibits an employer from discriminating against an individual on the basis of the individual's age. See 29 U.S.C. § 621 et seq. In enacting the ADEA, Congress created separate provisions for federal and non-federal employees. See 29. U.S.C. § 623(a); 29. U.S.C. § 633a(a). It is well settled that a non-federal employee must prove by a preponderance of the evidence that age was the "but-for" cause of the challenged personnel action. See Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009). However, after Gross, circuits disagree—and the Fifth Circuit has not definitively opined—on a federal employee's burden to establish liability under the ADEA.[7] Compare Ford v. Mabus, 629 F.3d 198 (D.C. Cir. 2010), and Fuller v. Gates, No. 06-091, 2010 WL 774965 (E.D. Tex. 2010), with Shelley v. Geren, 666 F.3d 599 (9th Cir. 2012), and Gordon v. Napolitano, 863 F. Supp. 2d 541 (E.D. Va. 2012), and Murthy v. Shinseki, No. 08-2015, 2010 WL 2178559 (C.D. Ill. 2010).

The non-federal employee ADEA provision states that "[i]t shall be unlawful for an employer . . . [to] discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a) (emphasis ours). Unlike the "because of" language in the non-federal provision, the federal employee provision states, "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29. U.S.C. § 633a(a) (emphasis ours). Because the Supreme Court in Gross interpreted the "because of" language in § 623(a) to require "but-for" causation, the different language in § 633a(a) has led to confusion among federal district and circuit courts as to the proper burden in a federal sector case.

---

[7] We note that we are wholly unaided by the parties in this case to determine the proper burden of proof.

The Fifth Circuit has come across this issue at least two times but has yet to decide definitively on the proper burden of proof. See Leal v. McHugh, 731 F.3d 405, 411–12 (5th Cir. 2013) ("We need not decide whether a federal plaintiff must prove but-for causation or some lesser standard under § 633a."); Fuller v. Panetta, 459 F. Appx. 436, 438, 2012 WL 278012 (5th Cir. 2012) ("[W]e reverse without reaching the question whether a mixed-motives theory is ever appropriate in the wake of Gross."). The primary guidance from the Fifth Circuit comes from the Leal opinion where the court discusses the D.C. Circuit's reasoning for applying a different burden of proof for federal employees. See Leal, 731 F.3d at 412 (discussing Ford, 629 F.3d at 198).

In Ford, the D.C. Circuit found that § 633a's more "sweeping" language requires a different interpretation than § 623(a). 629 F.3d at 205. To be true to the different statutory language and apparent Congressional intent, the D.C. Circuit held that Gross's more restrictive burden of proof, requiring "but-for" causation, is not the only way in which a federal employee may prove age discrimination. Id. The D. C. Circuit ultimately ruled that federal employee plaintiffs can establish liability under § 633a in one of two ways. Id. at 207.

First, "they can make use of the McDonnell Douglas evidentiary framework to establish that age was the but-for cause of the challenged personnel action." Id.; McDonnell Douglas, 411 U.S. at 802–05. Second, "plaintiffs may establish liability by showing that age was a factor in the challenged personnel action." Id.; Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Being that this issue is unsettled in the Fifth Circuit, we view the D.C. Circuit's reasoning in Ford as persuasive and believe it proper to find that a federal employee can use either the McDonnell Douglas or Price Waterhouse framework to prove an ADEA age discrimination claim under § 633a.

Under the McDonnell Douglas evidentiary framework, a plaintiff may establish that age was the "but-for" cause of the challenged personnel action. McDonnell Douglas, 411 U.S. at 802–05. In this framework, the plaintiff carries the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence. See Leal, 731 F.3d at 410. To satisfy this initial burden, plaintiffs must show: "1) they are within the protected class [i.e. at least 40 years of age]; 2) they are qualified for the position; 3) they suffered an adverse employment decision; and 4) they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class." Id. at 410–11 (citing Smith v. City of Jackson, Miss., 351 F.3d 183, 196 (5th Cir. 2003) (internal quotations omitted)).

Once a prima facie case has been established by a plaintiff, a defendant then has the burden of production to present "a legitimate, nondiscriminatory reason" for the employment decision. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000); Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010). If the defendant produces such evidence, the plaintiff then has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant [was] not its true reasons, but [was] a pretext for discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). However, under this framework, it is always the plaintiff's burden to "make an ultimate showing of intentional discrimination." Reed v. Neopost USA, Inc., 701 F.3d 434, 439 (5th Cir. 2012) (internal citations omitted)).

Under the Price Waterhouse framework, "once a plaintiff . . . shows that [discriminatory animus] played a motivating part in an employment decision, the [employer] may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [discriminatory animus] to play such a role." Id. (citing Price Waterhouse, 490 U.S. at 244–45).

However, in Ford, the D.C. Circuit also held that a plaintiff is only entitled to "declaratory and possibly injunctive relief" when he establishes that age was only a factor in the employer's decision. Id. at 207. For remedies such as instatement and back pay, a "but-for" standard of causation is necessary. Id.

### III.    Discussion

In the McDonnell Douglas framework, it is clear that Mr. Logan satisfied the four requirements to establish a prima facie case of discrimination under the ADEA: 1) he was 45 years of age when the selection was made for the IT Specialist position; 2) his work experience in the detail for training as an IT Specialist at Pollock qualified him to apply for the position; 3) he was not selected for the IT Specialist position; and 4) the selectee, Dustin Crawford, was substantially younger than Mr. Logan. Accordingly, the burden then shifted to the defendant to present a legitimate, nondiscriminatory reason for the personnel action.

At trial, Warden Keffer testified to several reasons for why Dustin Crawford was selected over Mr. Logan. He observed that Dustin Crawford had a dual bachelor's degree in physics and mathematics, had a valued prior military position as a Systems Control Officer (significant because of the Warden's personal knowledge of what is required of military personnel in similar capacities),[8] and had supervisory experience (not required for the IT Specialist position, but which Warden Keffer viewed as a "bonus"). Warden Keffer also testified that FCC Pollock would be able to offset 2,080 hours of overtime by hiring Dustin Crawford, which offset was not possible with a selection of any of the other three applicants. This was possible because Dustin Crawford was the only applicant not already employed at FCC Pollock.

---

[8] Warden Keffer testified that his brother held a similar position in the military.

Most importantly, Warden Keffer received an exceptional reference for Dustin Crawford from Warden Joe Young, the warden at FCC Oakdale.[9] Warden Keffer testified that he had great respect for Warden Young and that, had the reference come from another source, Dustin Crawford may well not have been selected for the position. We find all of these reasons to be legitimate and nondiscriminatory. Thus, in the analysis, the burden shifted back to Mr. Logan to show that these reasons were a pretext for discrimination.

One way Mr. Logan argued that Warden Keffer's proffered reasons were pretextual was because Mr. Logan was "clearly better qualified" than Dustin Crawford. See EEOC v. Louisiana Office of Community Service, 47 F.3d 1438, 1444 (5th Cir. 1995). We disagree. In order to prove that he was "clearly better qualified," Mr. Logan must have presented "evidence from which [the trier of fact] could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over him for the job in question." Moss v. BMC Software, Inc., 610 F.3d 917, 923 (5th Cir. 2010) (quoting Deines v. Texas Dep't of Protective Services, 164 F.3d 277, 280–81 (5th Cir. 1999)).

A thorough review of the Logan and Crawford résumés reveals that, although both were qualified for the entry level IT Specialist position, neither was clearly more qualified than the other. In fact, Warden Keffer testified that Mr. Logan's associate degree standing alone did not qualify him to apply for the position.[10] The only reason he was qualified at all was because of his 18 month detail for training as an IT Specialist, for which training he had been chosen by Warden Keffer. Even assuming that Mr. Logan's work experience made him "as qualified" as Dustin Crawford there is still no evidence that Mr. Logan was "clearly better qualified." See Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 42 (5th Cir. 1996) ("Obviously, work experience is one

---

[9] See Doc. 58-5, p.5.
[10] See Doc. 58-1.

8

component of defining who is more qualified," but "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another.").

Counsel for Mr. Logan also attempted to question whether Warden Keffer's stated staffing concerns were false or a post-hoc rationalization for hiring Dustin Crawford. See Louisiana Office of Community Service, 47 F.3d at 1444. Mr. Broussard pointed out to Warden Keffer that the staffing percentage before and after selecting Dustin Crawford remained at approximately 86% (arguably indicating there was no increase in the staffing levels).[11] However, Warden Keffer stated that this was consistent because the correctional services department already had over 100 employees, so adding Dustin Crawford would result in a less than 1% change. Warden Keffer further explained that hiring an applicant who was not already working at FCC Pollock would offset 2,080 hours of payable overtime each year. Thus, we find no evidence which proves Warden Keffer's proffered staffing concerns were false or a post-hoc rationalization.

Mr. Logan also offered comments allegedly made by Warden Keffer at other times as direct evidence of discriminatory animus. See Moss, 610 F.3d at 929. In this regard, Clift Crawford, the IT manager at FCC Pollock, testified that he had a conversation with Warden Keffer during the time when applicants were being considered, wherein Warden Keffer allegedly stated that he was impressed with a "young, 27 year old" with a master's degree. Additionally, Mr. Logan testified that Warden Keffer told him that a "young" guy from Oakdale was being chosen for the IT Specialist positon. However, Warden Keffer vehemently denied that either of these conversations took place and testified that he has never said to anyone that there was a "young" or "27 year old" applicant for the IT Specialist position.

---

[11] See Doc. 58-14; 58-17; 58-18.

9

The Fifth Circuit has held that "[i]n order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing [the trier of fact] to conclude without any inferences or presumptions that age was an impermissible factor in the [personnel] decision." E.E.O.C. v. Texas Instruments Inc., 100 F.3d 1173, 1181 (5th Cir. 1996) (citing Bodenheimer v. PPG Industries Inc., 5 F.3d 955, 958 (5th Cir.1993)). As the trier of fact in this case, we find Warden Keffer's testimony more credible than that of Clift Crawford or Richard Logan. Clift Crawford and Mr. Logan's testimony regarding their alleged conversations with Warden Keffer were unconvincing and vague at best; whereas, Warden Keffer was certain that the alleged remarks were never made.

Even if Warden Keffer had called Dustin Crawford a "young" guy from Oakdale, we find that this was a "stray remark" giving an observation about the selected applicant and does not imply that he was selected because he was, in fact, "young." See Guthrie v. Tifco Indus., 941 F.2d 374, 37–79 (5th Cir. 1991) (statement that the founder of a company suggested to his son that he needed "to surround himself with people his age" was not direct evidence of age discrimination). Accordingly, no credible direct evidence of age discrimination was produced at trial.

We now address whether Mr. Logan proved by a preponderance of the evidence that age was a "motivating factor" in Warden Keffer's decision not to hire Mr. Logan. See Price Waterhouse, 490 U.S. at 244–45. Mr. Logan testified that he believed age was a factor in the selection process because: each applicant's date of birth was on the cover sheet of the data report;[12] Warden Keffer allegedly made comments about a "young, 27 year old" to Clift Crawford; and Jared Cross, a relative of Dustin Crawford, had told Mr. Logan that Dustin Crawford's position in the Navy was merely a "help desk" position rather than an IT position.

---

[12] See Docs. 58-5, 58-6, 58-7, 58-8.

Warden Keffer was extensively questioned at trial about the application process and the information that he received and reviewed on each applicant who made the "Best Qualified List." Warden Keffer testified that, while date of birth was one piece of biographical information included in each applicant's data report, his process was to look at the applicant's name and then skip directly to the résumé portion of the data report. There is no evidence to rebut this testimony.

We have already found Warden Keffer's testimony—that the alleged comments about a "young, 27 year old" applicant did not occur—is more credible and, thus, not indicative of age discrimination. We also note that Jared Cross's alleged unsubstantiated comments to Mr. Logan about Dustin Crawford's position in the Navy being a "help desk" position does nothing to corroborate Mr. Logan's speculation that age was a factor in his not being hired for the IT Specialist position. Thus, not only do we find Mr. Logan has failed to satisfy the but-for causation standard, we also find Mr. Logan has failed to show by a preponderance of the evidence that age was even a factor in the IT Specialist selection process.

## IV.    Conclusion

Because we find Mr. Logan failed to produce evidence at trial of age discrimination to satisfy his burden of proof under the ADEA, all of Richard T. Logan's claims will be **DISMISSED WITH PREJUDICE at Plaintiff's cost**.

SIGNED on this 3RD day of May, 2016 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

11